### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Sally A. Schell, | |
| Plaintiff | Case No. 08 C 365 |
| v. | Judge Coar |
| American Cylinder Co., Inc., | Magistrate Judge Denlow |
| Defendant. | |

To:  J. Bryan Wood
The Law Office of J. Bryan Wood
53 West Jackson Boulevard
Suite 660
Chicago, Illinois 60604

### NOTICE OF FILING

Please take notice that on Monday, June 9, 2008, the attached Defendant's Answer to Plaintiff's Complaint was filed with the Clerk of the District Court for the Northern District of Illinois.

Respectfully Submitted,

By:  s/Anthony S. Graefe
Anthony S. Graefe
Attorney for Defendant

Anthony S. Graefe
Graefe & Hansen, Ltd.
55 West Monroe, Suite 3550
Chicago, IL 60603
(312) 236-0177

### CERTIFICATE OF SERVICE

I, Anthony S. Graefe, an attorney, state that I caused the attached document to be served upon the above mentioned person via electronic delivery on this the 9th day of June, 2008.

s/Anthony S. Graefe

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Sally A. Schell, | | |
| | Plaintiff | Case No. 08 C 365 |
| v. | | |
| American Cylinder Co., Inc., | | Judge Coar |
| | Defendant. | Magistrate Judge Denlow |

## ANSWER TO COMPLAINT

Now Comes, the Defendant, American Cylinder Co., Inc., by and through its attorneys, Anthony S. Graefe and Mark Hansen, Graefe & Hansen an in answer to Plaintiff's Complaint states as follows:

### Parties

1.    Ms. Schell, a female, is a citizen of the United States and the State of Illinois who resided in the Northern District of Illinois at all relevant times.

ANSWER: Defendant admits the allegations contained in paragraph 1.

2.    Defendant American Cylinder Co., Inc. is a Delaware Corporation whose principal place of business is Will County, Illinois. Among other things, Defendant manufactures air cylinders primarily used to move mechanical parts (similar to hydraulic cylinders). Defendant is an "employer" as defined by Title VII.

ANSWER: Defendant admits the allegations contained in paragraph 2.

## Summary of Allegations and Claims

3.    From practically her first day working for Defendant, Ms. Schell's coworker, Gary Messier, and her supervisor, Cliff Buchmeier, harassed Ms. Schell and created a hostile work environment.

**ANSWER:** Defendant denies the allegations contained in paragraph 3.

4.    Messier's near harassment primarily was based on Ms. Schell's gender. Messier thought Ms. Schell was treated favorably because she was a woman and, as a result, made Ms. Schell's working conditions miserable by harassing her on virtually a daily basis.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of what Messier thought but denies the remaining allegations contained in paragraph 4.

5.    Ms. Schell placed Defendant on notice of Messier's harassment by repeatedly complaining to Supervisor Buchmeier and other members of management or acting supervisors.

**ANSWER:** Defendant admits that Schell complained on two occasions concerning disputes she had with Messier, but denies the remaining allegations contained in paragraph 5.

6.    Supervisor Buchmeier's daily harassment of Ms. Schell also was based on her gender, but was more sexual in nature. Supervisor Buchmeier routinely inappropriately touched Ms. Schell and made inappropriate comments to and about Ms. Schell, including asking her to perform sex acts. Ms. Schell feared she would be fired if she complained about Supervisor Buchmeier's harassment.

**ANSWER:** Defendant denies the allegations contained in paragraph 6.

7.    Ultimately, the harassment Ms. Schell was experiencing became so unbearable she felt she had no choice but to resign. On approximately November 30, 2005, Ms. Schell submitted a resignation letter to Defendant's President and Chief Executive Officer ("CEO") Joseph White.

**ANSWER:** Defendant admits that on November 30, 2005, Ms. Schell submitted a resignation letter to Defendant's President and Chief Executive Officer, Joseph White, but denies the remaining allegations contained in paragraph 7.

8.    Later the same day, s. (sic.) Schell asked CEO White for her resignation letter back. But CEO White refused to allow Ms. Schell to take back her resignation.

**ANSWER:** Defendant admits that Schell asked CEO White to rescind her letter of resignation and that Mr. White declined to allow her to rescind the letter.

9.    CEO White's refusal to allow Ms. Schell to take back her resignation letter and Defendant's actions in terminating Ms. Schell's employment were motivated by her gender, her complaints about Messier's harassing behavior and the fact that she had filed a workers' compensation claim.

**ANSWER:** Defendant denies the allegations contained in paragraph 9.

10.    Defendant violated Title VII of the Civil Rights Act of 1964, as amended, by harassing Ms. Schell on the basis of her sex and/or gender, retaliating against her and terminating her employment or, alternatively, constructively discharging her.

**ANSWER:** Defendant denies the allegations contained in paragraph 10.

11.    Defendant also violated Illinois common law by terminating Ms. Schell or, alternatively, constructively discharging her because she exercised her rights under the Illinois Workers' Compensation Act.

**ANSWER:** Defendant denies the allegations contained in paragraph 11.

## EEOC Finding of Reasonable Cause

12.    Ms. Schell filed an EEOC charge against Defendant on March 16, 2006. A copy of Ms. Schell's EEOC charge is attached as Exhibit A.

3

**ANSWER:** Defendant admits the allegations contained in paragraph 12.

13.   the EEOC issued a Notice of Right to Sue on October 18, 2007.

**ANSWER:** Defendant admits the allegations contained in paragraph 13.

14.   The EEOC found reasonable cause to believe that Defendant violated Title VII. A copy of the Notice of Right to Sue is attached as Exhibit B.

**ANSWER:** Defendant avers that the EEOC's actions concerning this matter, other than issuing a Right to Sue are irrelevant and inadmissible.

15.   This Complaint was filed within ninety days of October 18, 2007.

**ANSWER:** Defendant admits the allegations contained in paragraph 15.

## Background

16.   Defendant operates a factory at 481 Governors Highway, Peotone, Illinois 60468 ("the Peotone factory").

**ANSWER:** Defendant admits the allegations contained in paragraph 16.

17.   Joseph White is Defendant's President and Chief Executive officer ("CEO").

**ANSWER:** Defendant admits the allegations contained in paragraph 17.

18.   Defendant employed Ms. Schell at its Peotone (sic.) factory from approximately June 6, 2000, thorough approximately December 1, 2005.

**ANSWER:** Defendant admits the allegations contained in paragraph 18.

19.   Throughout Ms. Schell's employment, Defendant employed Cliff Buchmeier as a Supervisor.

**ANSWER:** Defendant admits the allegations contained in paragraph 19.

20.   Supervisor Buchmeier oversaw two departments: the Rod & Department and the Drilling Department.

4

**ANSWER:** Defendant avers that Supervisor Buchmeier oversaw three department: Rod & Tubing, Body and Drilling Departments. Defendant otherwise admits the allegations contained in paragraph 20.

21.   Throughout her employment with Defendant, Ms. Schell worked in the Drilling Department. Ms. Schell's assigned position was "Drill Operator."

**ANSWER:** Defendant admits the allegations contained in paragraph 21.

22.   As a Drill Operator, Ms. Schell's primary responsibility was to operate a drill press used to cut holes in parts of the cylinders Defendant manufactured. Ms. Schell also occasionally ran a mill saw used for cutting metal.

**ANSWER:** Defendant admits the allegations contained in paragraph 22.

23.   Ms. Schell was the only woman who worked in the Drilling Department throughout all but a few months of her employment with Defendant.

**ANSWER:** Defendant avers that there were only three or four people in the Drilling Department during the time Ms. Schell was employed in that Department and otherwise admits the allegations contained in paragraph 23.

24.   Ms. Schell reported directly to Supervisor Buchmeier throughout her employment with Defendant.

**ANSWER:** Defendant admits the allegations contained in paragraph 24.

25.   Throughout Ms. Schell's employment, she met or exceeded Defendant's expectations for performance. During her employment, she cut or drilled thousands if not millions of metal parts and only very rarely were any problems identified with her drilling or cutting.

**ANSWER:** Defendant denies the allegations contained in paragraph 25.

26.   Throughout Ms. Schell's employment, Defendant also employed Gary Messier.

**ANSWER:** Defendant admits the allegations contained in paragraph 26.

27.   When Ms. Schell was hired in approximately June 6, 2000, Messier worked in the Drilling Department as a Drill Operator. Messier continued to work in the Drilling Department until approximately June 2005.

**ANSWER:** Defendant admits the allegations contained in paragraph 27.

<u>**Allegations of Harassment by Messier**</u>

28.   Throughout Ms. Schell's employment, Gary Messier, harassed and intimidated ms. Schell based on her gender.

**ANSWER:** Defendant denies the allegations contained in paragraph 28.

29.   For example, Messier repeatedly commented to Ms. Schell and her coworkers on the frequency and duration of Ms. Schell's bathroom breaks. Messier repeatedly, rudely and angrily asked Ms. Schell questions like "why do you go to the bathroom so much?" and "why do you take so long in the bathroom?"

**ANSWER:** Defendant denies the allegations contained in paragraph 29.

30.   As a result of a medical condition, Ms. Schell often needed longer and more frequent bathroom breaks than her male coworkers. Ms. Schell attempted to explain this to Messier on multiple occasions. But Messier always responded with comments like "so you're female - see a doctor" or "why don't you go to the doctor?"

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the averment that Ms. Schell had a medical condition and her allegation concerning what she said to Mr. Messier and what his response, if anything, was to her and denies the remaining allegations in paragraph 30.

6

31.   Messier also made comments about the fact that Ms. Schell was allowed to use a chair at work. Specifically, Messier repeatedly made comments like "I can stand for eight hours - why the hell can't she?"

ANSWER:  Defendant avers that any employee in the Drilling Department could use a chair at work and denies the remaining allegations contained in paragraph 31.

32.   In addition to making comments like these to Ms. Schell, Messier also made inappropriate comments to Ms. Schell's coworkers and supervisor on virtually a daily basis. For example, on one occasion, shortly before Ms. Schell was scheduled to go on vacation, Messier remarked "don't worry, we only have one more day with her here" as Ms. Schell walked away from Messier.

ANSWER:  Defendant denies the allegations contained in paragraph 32.

33.   Messier also routinely intimidated Ms. Schell in front of her coworkers. For example, on one occasion Ms. Schell and her male coworkers were laughing in sight of Messier. Although Ms. Schell was with her male coworkers, Messier stormed towards Ms. Schell and angrily - almost yelling - asked, "do you have a problem with me?" When Ms. Schell explained that she and her coworkers were laughing about something else, Messier quickly snapped back, "you better not" and walked away in a huff.

ANSWER:  Defendant denies the allegations contained in paragraph 33.

34.   Messier engaged in other types of harassment with the goal of making Ms. Schell's work environment more difficult or unbearable. For example, when Messier knew assignments he was given needed to be completed by a certain time in order for Ms. Schell to complete the next step in the production process, Messier would deliberately work slowly and blame the lack of completion of the project on Ms. Schell.

**ANSWER:** Defendant denies the allegations contained in paragraph 34.

35.    Additionally, Messier would needlessly complain about Ms. Schell's music and turn off her stereo. On one occasion, Messier turned her speakers towards other coworkers and - in so doing - ripped the speaker wires from the stereo.

**ANSWER:** Defendant denies the allegations contained in paragraph 35.

36.    Messier also made inappropriate comments that Ms. Schell reasonably found offensive and harassing. For example, in the presence of Ms. Schell and another coworker, Messier spoke of having sex with his wife. he then stated "if I had a seventeen inch penis, I wouldn't need my wife . . . I could just do myself." Ms. Schell understood Messier was referring to having sex with himself.

**ANSWER:** Defendant denies the allegations contained in paragraph 36.

37.    Messier also made Ms. Schell's working conditions difficult by staring at her, sneering at her, refusing to acknowledge her while in her presence, and engaging in other behavior which a reasonable person would find harassing.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to how Ms. Schell perceived Messier's facial expressions or actions and denies the remaining allegations contained in paragraph 37.

38.    Ms. Schell reasonably found Messier's conduct harassing and unwelcome. She repeatedly asked him to stop engaging in the conduct she found harassing.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the averment as to how Ms. Schell felt concerning any conduct by Mr. Messier and denies the remaining allegations contained in paragraph 38.

39.   Ms. Schell also complained about Messier's harassment Defendant's management and supervisors.

**ANSWER:** Defendant admits that Ms. Schell complained about Mr. Messier's conduct on two occasions but denies the remaining allegations contained in paragraph 39.

40.   Specifically, Ms. Schell formally complained to Supervisor Buchmeier about Messier in approximately 2002. In response, Defendant failed to take steps to prevent Messier from continuing to harass Ms. Schell. Specifically, Supervisor Buchmeier asked Ms. Schell, "what do you want me to do about it?" - implying Defendant was powerless to change Messier's behavior.

**ANSWER:** Defendant admits that Ms. Schell complained about something Messier allegedly said and avers that it investigated the matter. Defendant admits that Supervisor Buchmeier asked Ms. Schell what she wanted him to about Messier's conduct, and avers that Ms. Schell responded that she did not want him to anything specific about it. Defendant otherwise denies the allegations contained in paragraph 40.

41.   Ms. Schell formally complained to Supervisor Buchmeier again about Messier's harassment in approximately 2003. Again Defendant failed to take steps to prevent Messier from continuing to harass Ms. Schell.

**ANSWER:** Defendant denies the allegations contained in paragraph 41.

42.   Messier engaged in the type of behaviors described above both before and after Ms. Schell complained about his harassing behavior.

**ANSWER:** Defendant denies the allegations contained in paragraph 42.

43.   In approximately December 2004, Ms. Schell was sitting at a desk preparing paperwork should (sic) would need to complete as part of her duties prior to the start of her shift. CEO White approached Ms. Schell and falsely accused her of taking too much time to complete her work

assignments and spending too much time sitting at the desk doing paperwork. CEO White criticized Ms. Schell despite the fact that she had arrived early to work and begun working before her shift, which she did often.

**ANSWER:** Defendant avers that CEO White regularly asks employees about what they are doing and will ask an employee why the employee is sitting at a desk instead of working on a machine, but Defendant denies the remaining allegations contained in paragraph 43.

44.    As another act of harassment and retaliation, CEO White told Ms. Schell he was going to assign Messier to monitor whether she was completing her work responsibilities.

**ANSWER:** Defendant denies the allegations contained in paragraph 44.

45.    CEO White knew about Ms. Schell's complaints of harassment by Messier when he assigned Messier to monitor Ms. Schell in approximately December 2004.

**ANSWER:** Defendant denies the allegations contained in paragraph 45.

46.    Messier continued to harass Ms. Schell as alleged above after December 2004.

**ANSWER:** Defendant denies the allegations contained in paragraph 46.

47.    In approximately June 2005, Messier cornered Ms. Schell at the Peotone factory. Ms. Schell had been working with Paul Zakrzewski, Defendant's Quality Control Officer, to ensure her drill was calibrated correctly.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to whether Ms. Schell had been working with Paul Zakrzewski in June, 2005 to ensure her drill was calibrated correctly but denies the remaining allegations contained in paragraph 47.

48.    After Zakrzewski left the area, Messier approached Ms. Schell, blocking her exit. Ms. Schell was prevented from moving by Messier (who was facing her), the drill (which was behind her) and two work tables (which were on each side of her).

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 48.

49.    Chest-to-chest with Ms. Schell, Messier angrily shouted at Ms. Schell, state that she was stupid, ignorant and he did not understand why she got special treatment. Messier shouted so loudly, employees on the far end of the Peotone factory could hear him.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to what, if anything, Mr. Messier did or said concerning Ms. Schell but denies the remaining allegations contained in paragraph 49.

50.    Intimated (sic) by Messier and fearful of what else he might do, Ms. Schell began to cry.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments concerning what Ms. Schell may or may not have felt, and denies the remaining allegations contained in paragraph 50.

51.    Supervisor Buchmeier was on vacation during the incident. Jim Bilgri was Defendant's acting supervisor during his absence.

**ANSWER:** Defendant avers that it knows of one instance in which Ms. Schell reported an incident concerning Mr. Messier to Jim Bilgri but denies that he was the acting supervisor at that time and the remaining allegations contained in paragraph 51.

52.    Ms. Schell again formally complained about Messier's behavior, this time to acting supervisor Bilgri.

**ANSWER:** Defendant avers that Ms. Schell made one formal complaint concerning Mr. Messier's behavior but denies the remaining allegations contained in paragraph 52.

53.    Acting supervisor Bilgri took notes during his conversation about the incident with Ms. Schell. Bilgri informed Supervisor Buchmeier about the incident upon his return from vacation.

**ANSWER:**  Defendant avers that Jim Bilgri took notes concerning his conversation with Ms. Schell and gave the statement which Ms. Schell signed to Supervisor Buchmeier who had a meeting with Messier upon his return, which was also documented, and Defendant denies the remaining allegations contained in paragraph 53.

54.    In approximately June 2005, Defendant transferred Messier out of Ms. Schell's department.

**ANSWER:**  Defendant admits the allegations contained in paragraph 54.

55.    After Messier transferred out of Ms. Schell's department, Ms. Schell had no further direct contract with Messier. Although Ms. Schell and Messier continued to work in the same building, Ms. Schell did her best to avoid coming into contact with Messier.

**ANSWER:**  Defendant admits that Ms. Schell had no further direct contact with Messier after he was transferred out of the Drilling Department and admits that they both continued to work in the same building but is without knowledge or information sufficient to form a belief as to whether Ms. Schell did her best to avoid coming in contact with Messier.

56.    After Messier was transferred out of Ms. Schell's department, Messier still continued to harass Ms. Schell by, among other things, continuing to make negative comment about Ms. Schell to her coworkers and supervisor.

**ANSWER:**  Defendant denies the allegations contained in paragraph 56.

57.    Additionally, on occasions when Ms. Schell and Messier would pass, Messier would continue to engage in behavior Ms. Schell reasonably considered harassing.

**ANSWER:**  Defendant denies the allegations contained in paragraph 57.

58.    Throughout Ms. Schell's employment with Defendant Messier harassed Ms. Schell because of her gender and/or sex. Messier perceived that Ms. Schell was given special treatment (like a chair or longer bathroom breaks) because she was a woman and, therefore, resented her.

ANSWER:  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning how Messier perceived Ms. Schell and denies the remaining allegations contained in paragraph 58.

59.    Messier did not treat his male coworker in the harassing way he treated Ms. Schell.

ANSWER:  Defendant denies the allegations contained in paragraph 59.

60.    Ms. Schell did not find Messier's treatment welcome in any fashion. She took reasonable steps to oppose Messier's behavior towards her, including repeatedly telling him to stop engaging in behavior she found harassing and complaining to Defendant's management both formally and informally.

ANSWER:  Defendant admits that Ms. Schell complained on a couple of occasions concerning Messier's conduct, avers that it took an appropriate action by moving Messier to a different department and denies the remaining allegations contained in paragraph 60.

**Allegations of Harassment by Supervisor Buchmeier**

61.    Supervisor Buchmeier also contributed to the hostile environment in which Ms. Schell worked. Throughout her employment with Defendant, Supervisor Buchmeier harassed Ms. Schell - both verbally and physically - on a near daily basis.

ANSWER:  Defendant denies the allegations contained in paragraph 61.

62.    Supervisor Buchmeier would touch Ms. Schell inappropriately almost daily. Specifically, these touchings included Supervisor Buchmeier fondling Ms. Schell's hands by rubbing his fingers in Ms. Shell's palm as he gave her work assignments. Supervisor Buchmeier

also repeatedly rubbed up against Ms. Schell or leaned up against her, inappropriately touching her buttocks or breasts.

**ANSWER:** Defendant denies the allegations contained in paragraph 62.

63.    Supervisor Buchmeier also repeatedly untied Ms. Schell's work apron and snapped her brazier (sic) strap. On other occasions, Buchmeier attempted to pour water on Ms. Schell's shirt, spit water at her to wet her shirt and allowed her to be squired with squirt guns. These touchings continued on a routine basis throughout Ms. Schell's employment with Defendant.

**ANSWER:** Defendant admits that Supervisor Buchmeier on a couple of occasions untied Ms. Schell's work apron but denies the remaining allegations contained in paragraph 63.

64.    Additionally, Supervisor Buchmeier made inappropriate, sexual comments to Ms. Schell on a routine and virtually daily basis. For example, after Ms. Schell inquired about additional work assignments, Supervisor Buchmeier remarked that he had work for Ms. Schell, and then told her to "get on your knees." Ms. Schell reasonably understood Supervisor Buchmeier was asking her to perform oral sex.

**ANSWER:** Defendant denies the allegations contained in paragraph 64.

65.    Supervisor Buchmeier also repeatedly made other inappropriate remarks that Ms. Schell reasonably understood to be requests for sex. For example, early in Ms. Schell's employment and repeatedly thereafter, Supervisor Buchmeier specifically asked Ms. Schell "when are we going to have sex?" Additionally, Supervisor Buchmeier repeatedly made remarks like "my wife is going on vacation, can I come over?"

**ANSWER:** Defendant denies the allegations contained in paragraph 65.

66.    Supervisor Buchmeier also made rude and obscene gestures towards Ms. Schell throughout her employment. For example, Supervisor Buchmeier often stuck his tongue out

towards Ms. Schell and moved it in a circular and up and down fashion. Ms. Schell reasonably understood Supervisor Buchmeier was mimicking a man performing oral sex on a woman.

**ANSWER:** Defendant denies the allegations contained in paragraph 66.

67.    Supervisor Buchmeier also routinely made inappropriate, sexual comments about Ms. Schell to her coworkers.

**ANSWER:** Defendant denies the allegations contained in paragraph 67.

68.    At one point in approximately late 2003 or early 2004, Supervisor Buchmeier threatened Ms. Schell as a further act of harassment. Ms. Schell was developing carpel tunnel syndrome as a result of performing her job duties for Defendant. Occasionally, the pain she experienced in her wrist was visible to others.

**ANSWER:** Defendant denies the allegations contained in paragraph 68.

69.    Once, when Supervisor Buchmeier noticed Ms. Schell in pain, he walked over to her with his large pocket-knife out. He opened the blade and remarked, "I know how to fix your wrists." Supervisor Buchmeier then made a cutting motion over Ms. Schell's wrists, mimicking slitting the veins in her wrists.

**ANSWER:** Defendant denies the allegations contained in paragraph 69.

70.    Supervisor Buchmeier repeatedly used his knife inappropriately in a way that made Ms. Schell fearful. For example, Supervisor Buchmeier would take the knife out, open it, and pretend to poke Ms. Schell with the blade. Supervisor Buchmeier did not engage in similar behavior towards men.

**ANSWER:** Defendant denies the allegations contained in paragraph 70.

71.    Based on Supervisor Buchmeier's conduct with his pocket-knife, Ms. Schell reasonably feared Supervisor Buchmeier might physically harm her.

**ANSWER:** Defendant denies the allegations contained in paragraph 71.

72.    Supervisor Buchmeier also routinely made light of Ms. Schell's carpel tunnel syndrome in a sexual way. On several occasions when Supervisor Buchmeier saw Ms. Schell in pain, he would remark in a suggestive tone, "I know how to make your wrists feel better." Ms. Schell reasonably understood Supervisor Buchmeier was implying he could make her wrists feel better by having sex or engaging in sex acts with her.

**ANSWER:** Defendant denies the allegations contained in paragraph 72.

73.    Supervisor Buchmeier also explained that complaining about his sexual harassing behavior was futile. Specifically, Supervisor Buchmeier said Ms. Schell could never prove sexual harassment because it was Ms. Schell's "word against [his]."

**ANSWER:** Defendant denies the allegations contained in paragraph 73.

74.    Ms. Schell never complained about Supervisor Buchmeier's harassment because she feared she would lose her job and believed Defendant would refuse to reprimand Supervisor Buchmeier.

**ANSWER:** Defendant denies the allegations contained in paragraph 74.

75.    Ms. Schell spoke with coworker Mark Van Vleck about Buchmeier's harassment and whether she should complain. Van Vleck agreed with Ms. Schell that if she complained to CEO White, he would not do anything about it.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of any conversations that took place between Ms. Schell and Mark Van Vleck but denies the allegation that CEO White would have done nothing if any allegations of harassment were reported to him.

76.    Ms. Schell did not find Supervisor Buchmeier's behavior welcome in any fashion. She took reasonable steps to oppose Supervisor Buchmeier's behavior towards her by asking Supervisor Buchmeier to stop. She also made her opposition to his behavior clear by, for example, quickly pulling her hands away when he would try to rub them inappropriately and refusing his repeated requests for sex.

ANSWER:  Defendant denies the allegations contained in paragraph 76.

77.    Ms. Schell understood she was not the first woman Supervisor Buchmeier harassed. Prior to being employed by Defendant, Supervisor Buchmeier worked for Bimba Manufacturing, a manufacturing company similar to Defendant. Ms. Schell heard from a coworker that Supervisor Buchmeier was alleged to have harassed a female employee when he was employed at Bimba Manufacturing. Ms. Schell also heard from a coworker that the reason for Supervisor Buchmeier's departure from Bimba Manufacturing was the result of a complaint of sexual harassment against him.

ANSWER:  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 77.

78.    Based on her conversations with coworkers and her observations of Defendant's workplace during her employment, Ms. Schell also believes other current and former female employees of Defendant have been and/or are being harassed based on their sex and/or gender.

ANSWER:  While Defendant is without knowledge or information sufficient to form a belief as to whether Ms. Schell had any conversation with other employees, but it denies that other employees had been harassed based on sex or gender.

## Ms. Schell's Workers' Compensation Claim

79.    As a result of operating a drill press for Defendant, Ms. Schell developed carpel tunnel syndrome in her right hand. Ms. Schell's repetitive trauma injury required Ms.Schell to have surgery and miss work.

ANSWER:  Defendant admits that Ms. Schell was on leave due to a claim of a work-related injury, but denies that she developed carpel tunnel syndrome due to work at Defendant.

80.    Ms. Schell exercised her right to recover for her work injury under the Illinois Workers' Compensation Act. Specifically, Ms. Schell filed a workers' compensation claim that she settled with Defendant in approximately June 2005.

ANSWER:  Defendant admits the allegations contained in paragraph 80.

81.    As a result of Ms. Schell exercising her rights under the Illinois Workers' Compensation Act, Defendant incurred additional financial costs and had to complete additional administrative tasks, including substantial paperwork.

ANSWER:  Defendant admits the allegations contained in paragraph 81.

82.    Throughout the summer of 2005, Ms. Schell attempted to return to work with certain medical restrictions authorized by her physician, but Defendant refused to allow Ms. Schell to return to work.

ANSWER:  Defendant avers that her leave due to a work-related claim of a work-related injury was in 2004 and denies the allegations contained in paragraph 82.

83.    In approximately early September 2005, Defendant claimed it had no work Ms. Schell could perform with her medical restriction. Ms. Schell returned to work in approximately late summer or early fall 2005.

**ANSWER:** Defendant avers that Schell returned to work in or about November, 2004, and denies the allegations contained in paragraph 83.

### Ms. Schell's Constructive Discharge

84.    After Ms. Schell returned from leave related to her work-related injury, she continued to experience a hostile work environment based on her gender and/or sex and/or retaliation for complaining about harassing behavior.

**ANSWER:** Defendant denies the allegations contained in paragraph 84.

85.    Ms. Schell's hostile work environment became unbearable as a result of Defendant's, Messier's and Supervisor Buchmeier's continuing harassment. Ms. Schell felt as though Defendant was trying to force her to quit.

**ANSWER:** Defendant denies the allegations contained in paragraph 85.

86.    In approximately November 2005, Supervisor Buchmeier informed Ms. Schell that he was going on vacation. Supervisor Buchmeier asked Ms. Schell if she would serve as temporary supervisor during his absence.

**ANSWER:** Defendant avers that Supervisor Buchmeier always takes a vacation around the Christmas and New Years holidays and that he scheduled and had approved such a vacation in 2005. Defendant further avers that Buchmeier asked Ms. Schell to be the temporary supervisor of only the Drilling Department. Defendant admits the allegations contained in paragraph 86.

87.    Damaged by years of harassment, Ms. Schell declined.

**ANSWER:** Defendant admits that Ms. Schell declined to be the acting supervisor of the Drilling Department but denies the remaining allegations contained in paragraph 87.

88.    Supervisor Buchmeier made it clear he wanted Ms. Schell to act as supervisor, forcefully asking her to do it. Ms. Schell again declined.

**ANSWER:** Defendant avers that Ms. Schell was the only employee in the Drilling Department in late 2005 who had sufficient experience to be the acting supervisor and denies the remaining allegations contained in paragraph 88.

89.    Aware of Ms. Schell's history with Messier, Supervisor Buchmeier remarked that he would "have" to give the temporary supervisor assignment to Messier since Ms. Schell refused. Supervisor Buchmeier could have chosen any of a number of employees to act as temporary supervisor, but said he would chose (sic) Messier as yet another act of harassment and retaliation towards Ms. Schell.

**ANSWER:** Defendant avers the Messier was the only other person besides Ms. Schell who had sufficient experience to supervise the Drilling Department and denies the remaining allegations contained in paragraph 89.

90.    Ms. Schell informed Supervisor Buchmeier that if he assigned Messier as her temporary supervisor, she would have no choice but to resign.

**ANSWER:** Defendant denies the allegations contained in paragraph 90.

91.    Rather than allowing Ms. Schell and Messier to continue to work in different departments, Supervisor Buchmeier said he still intended to assign Messier as her temporary supervisor.

**ANSWER:** Defendant denies the allegations contained in paragraph 91.

92.    Ms. Schell reasonably felt the harassment she was experiencing was more than she could endure, especially if she would be forced to report directly to Messier during Supervisor Buchmeier's absence. As a result, Ms. Schell tendered her resignation on November 30, 2005.

**ANSWER:** Defendant admits Ms. Schell tendered her resignation on or about November 30, 2005 but is without knowledge or information sufficient to form a belief as to why she decided to resign, and denies the remaining allegations contained in paragraph 92.

93. On approximately November 30, 2005, Ms. Schell gave a resignation letter to CEO White.

**ANSWER:** Defendant admits the allegations contained in paragraph 93.

94. When Supervisor Buchmeier learned Ms. Schell had given CEO White a resignation letter, he asked Ms. Schell to get it back from CEO White and offered to "work something out." Ms. Schell understood Supervisor Buchmeier was offering to assign a new temporary supervisor during his vacation.

**ANSWER:** Defendant denies the allegations contained in paragraph 94.

95. Ms. Schell tried to get her resignation letter back from CEO White, but CEO White refused to allow her to take it back. Instead, he told Ms. Schell he had "accepted" the resignation effective December 1, 2005 (the next day).

**ANSWER:** Defendant admits that Ms. Schell asked that her resignation be rescinded and that CEO White declined her request and that CEO White told her that her resignation was effective December 1, 2005.

96. Because she needed her job to pay her bills and understood Messier would not be serving as her temporary supervisor during Supervisor Buchmeier's absence, Ms. Schell reported to work on December 1, 2005.

**ANSWER:** Defendant denies the allegations contained in paragraph 96.

97. Defendant did not allow Ms. Schell to work on December 1, 2005. Instead, Defendant asked Ms. Schell to gather her personal belongings and escorted her from the premises.

ANSWER: Defendant avers that it routinely has Donna Hecht go with an employee to gather his or her personal belongings and escort them from the premises anytime an employee quits, and denies the remaining allegations contained in paragraph 97.

98.   By refusing to allow Ms. Schell to rescind her resignation or work, Defendant terminated Ms. Schell's employment.

ANSWER: Defendant denies the allegations contained in paragraph 98.

99.   Alternative, by making her work environment so intolerable and hostile, Defendant constructively discharged Ms. Schell.

ANSWER: Defendant denies the allegations contained in paragraph 99.

### Jurisdiction and Venue

100.  Ms. Schell alleges claims against Defendant under Title VII, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"), and Illinois common law.

ANSWER: Defendant admits only that Ms. Schell is making claims against it under Title VII and under Illinois common law but denies any of her allegations concerning liability.

101.  This Court has jurisdiction over Ms. Schell's Title VII claims pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3).

ANSWER: Defendant admits that the court has jurisdiction over this matter.

102.  This Court has supplemental jurisdiction of Ms. Schell's Illinois common law claims pursuant to 28 U.S.C. § 1367.

ANSWER: Defendant admits that this court has supplemental jurisdiction over Ms. Schell's Illinois common law claim.

103.  Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and/or 29 U.S.C. § 1392(b)(2) because the alleged unlawful conduct occurred in this judicial district.

ANSWER: Defendant admits that the venue is proper.

## Defendant's Conduct Constitutes a Continuing Violation

104. The harassment Ms. Schell experienced from her coworker, Gary Messier and her supervisor, Cliff Buchmeier, continued throughout her employment. Thus, Defendant's unlawful harassing conduct towards Ms. Schell constitutes a continuing unlawful employment practice and is not a discrete act.

ANSWER: Defendant denies the allegations contained in paragraph 104.

105. Additionally, the event culminating in Ms. Schell's termination of employment or, alternatively, her constructive discharge continued throughout her employment. Thus, Defendant's constructive discharge of Ms. Schell constitutes a continuing unlawful employment practice and is not a discrete act.

ANSWER: Defendant denies the allegations contained in paragraph 105.

## Ms. Schell Suffered Injury as a Result of Defendant's Conduct

106. As a result of Defendant's unlawful conduct, Ms. Schell was denied equal employment opportunities.

ANSWER: Defendant denies the allegations contained in paragraph 106.

107. As a result of Defendant's unlawful conduct, Ms. Schell also lost past and future wages and other benefits (including profit sharing under Defendant's profit-sharing plant). She also suffered embarrassment, humiliation, loss of dignity, and her career was irreparably damaged as a result of Defendant's unlawful conduct.

ANSWER: Defendant denies the allegations contained in paragraph 107.

108. As a result of Defendant's unlawful conduct and its efforts to oppose unemployment compensation benefits for Ms. Schell, Ms. Schell also now owes the State of Illinois for unemployment compensation benefits she received.

**ANSWER:** Defendant denies the allegations contained in paragraph 108.

109. Defendant's actions also caused Ms. Schell to incur attorneys' fees and costs.

**ANSWER:** Defendant denies the allegations contained in paragraph 109.

## COUNT I

### Hostile Work Environment Based on Gender and/or Sex Under Title VII

110. Ms. Schell repleads the allegations contained in all paragraphs of this complaint, and incorporates them by reference as if fully set forth herein.

**ANSWER:** Defendant realleges its answers to all of the previous paragraphs as its answer to paragraph 110 as if fully set forth herein.

111. Ms. Schell's gender and/or sex was a motivating factor in the harassing behavior by Messier and Buchmeier that resulted in the hostile work environment she experienced.

**ANSWER:** Defendant denies the allegations contained in paragraph 111.

112. Defendant's harassing conduct was severe and pervasive.

**ANSWER:** Defendant denies the allegations contained in paragraph 112.

113. Ms. Schell took reasonable steps to oppose the harassment she was experiencing.

**ANSWER:** Defendant denies the allegations contained in paragraph 113.

114. Ms. Schell complained about Messier's harassing behavior.

**ANSWER:** Defendant admits that Ms. Schell complained about Messier's conduct on a couple of occasions and avers that it transferred Messier to a different department and otherwise denies the allegations contained in paragraph 114.

115. Although Defendant was on notice of the harassment by Messier and Buchmeier, it failed to take prompt and effective remedial action sufficient to prevent the harassment from continuing.

**ANSWER:** Defendant denies the allegations contained in paragraph 115.

116. As a result of Defendant's actions, Ms. Schell sustained a loss of past and future wages and benefits, damage to her career, emotional distress (including, without limitation, humiliation, embarrassment and loss of dignity), attorney fees, and related costs.

**ANSWER:** Defendant denies the allegations contained in paragraph 116.

117. The actions of the Defendant were intentional and/or done maliciously or with reckless indifference to Ms. Schell's rights.

**ANSWER:** Defendant denies the allegations contained in paragraph 117.

## COUNT II

### Termination or, Alternatively, Constructive Discharge Based on Gender and/or Sex Under Title VII

118. Ms. Schell repleads the allegations contained in all paragraphs of this complaint, and incorporates them by reference as if fully set forth herein.

**ANSWER:** Defendant realleges its answers to all of the previous paragraphs as its answer to paragraph 118 as if fully set forth herein.

119. Ms. Schell's gender and/or sex was a motivating factor in the harassing behavior by Messier and Buchmeier that resulted in the hostile work environment she experienced.

**ANSWER:** Defendant denies the allegations contained in paragraph 119.

120. Although Defendant was on notice of the harassment by Messier and Buchmeier, it failed to take prompt and effective remedial action sufficient to prevent the harassment from continuing.

**ANSWER:** Defendant denies the allegations contained in paragraph 120.

121. Defendant's harassing conduct became so unbearable such that Ms. Schell reasonably believed she had no choice but to resign.

**ANSWER:** Defendant denies the allegations contained in paragraph 121.

122. Defendant's termination of Ms. Schell's employment by refusing to allow her to take back her resignation letter and/or to continue working on or after December 1, 2005, was motivated by Ms. Schell's gender and/or sex.

**ANSWER:** Defendant denies the allegations contained in paragraph 122.

123. As a result of Defendant's actions, Ms. Schell sustained a loss of past and future wages and benefits, damage to her career, emotional distress (including, without limitation, humiliation, embarrassment and loss of dignity), attorney fees, and related costs.

**ANSWER:** Defendant denies the allegations contained in paragraph 123.

124. The actions of Defendant were intentional and/or done maliciously or with reckless indifference to the rights of Ms. Schell.

**ANSWER:** Defendant denies the allegations contained in paragraph 124.

## COUNT III

## Retaliatory Termination or, Alternatively, Constructive Discharge Under Title VII

125. Ms. Schell repleads the allegations contained in all paragraphs of this complaint, and incorporates them by references as if fully set forth herein.

**ANSWER:** Defendant realleges its answers to all of the previous paragraphs as its answer to paragraph 125 as if fully set forth herein.

126. By complaining about harassment by Messier, Ms. Schell engaged in protected activity under Title VII.

**ANSWER:** Defendant denies the allegations contained in paragraph 126.

127. Ms. Schell's complaints about the harassment and hostile work environment she experienced were a motivating factor for Defendant's harassing conduct towards her after her complaints.

**ANSWER:** Defendant denies the allegations contained in paragraph 127.

128. Defendant's harassing conduct became so unbearable such that Ms. Schell reasonably believed she had no choice but to resign.

**ANSWER:** Defendant denies the allegations contained in paragraph 128.

129. Defendant's termination of Ms. Schell's employment by refusing to allow her to take back her resignation letter and/or to continue working on or after December 1, 2005, was motivated by Ms. Schell's protected activity.

**ANSWER:** Defendant denies the allegations contained in paragraph 129.

130. As a result of Defendant's actions, Ms. Schell sustained a loss of past and future wages and benefits, damage to her career, emotional distress (including, without limitation, humiliation, embarrassment and loss of dignity), attorney fees, and related costs.

**ANSWER:** Defendant denies the allegations contained in paragraph 130.

131. The actions of the Defendant were intentional and/or done maliciously or with reckless indifference to the rights of the (sic) Ms. Schell.

**ANSWER:** Defendant denies the allegations contained in paragraph 131.

## COUNT IV

### Retaliatory Termination or, Alternatively, Constructive Discharge
### In Violation of Illinois Common Law

132. Ms. Schell repleads the allegations contained in all paragraphs of this complaint, and incorporates them by reference as if fully set forth herein.

ANSWER: Defendant realleges its answers to all of the previous paragraphs as its answer to paragraph 132 as if fully set forth herein.

133. Illinois public policy requires that employees be free from retaliation for attempting to exercise their rights to recover for work injuries under the Illinois Workers' Compensation Act.

ANSWER: Defendant denies that it retaliated in any way against Plaintiff and thus denies the remaining allegations in paragraph 133.

134. Ms. Schell's attempt to exercise her rights under the Illinois Workers' Compensation Act was a motivating factor in the harassing behavior by Messier and Buchmeier that resulted in the hostile work environment she experienced.

ANSWER: Defendant denies the allegations contained in paragraph 134.

135. Defendant's harassing conduct became so unbearable such that Ms. Schell reasonably believed she had no choice but to resign.

ANSWER: Defendant denies the allegations contained in paragraph 135.

136. Defendant's termination of Ms. Schell's employment by refusing to allow her to take back her resignation letter and/or work to continue working on or after December 1, 2005, was motivated by Ms. Schell's attempt to exercise her rights under the Illinois Workers' Compensation Act.

ANSWER: Defendant denies the allegations contained in paragraph 136.

137. As a result of the actions of the Defendant, as set forth above, Ms. Schell sustained a loss of past and future wages and benefits, damage to her career, emotional distress (including, without limitation, humiliation, embarrassment and loss of dignity), attorney fees, and related costs.

ANSWER: Defendant denies the allegations contained in paragraph 137.

138. The actions of the Defendant were intentional and/or done maliciously or with reckless indifference to the rights of the (sic) Ms. Schell.

**ANSWER:** Defendant denies the allegations contained in paragraph 138.

### Relief Sought - All Counts

139. Ms. Schell repleads the allegations contained in all paragraphs of this complaint, and incorporates them by reference as if fully set forth herein.

**ANSWER:** Defendant realleges its answers to all of the previous paragraphs as its answer to paragraph 139 as if fully set forth herein.

140. Defendant's unlawful employment practices under Title VII must be attacked from several directions. According, Ms. Schell respectfully requests that the Court enter an order declaring Defendant violated Title VII and directing that Defendant:

a. Conduct training for all managers regarding sexual harassment, Defendant's policy regarding sexual harassment, Defendant's reporting procedure for sexual harassment, and retaliation;

b. Conduct training regarding how to prevent hidden and overt bias (including stereotypes) from impeding the advancement of women in the workplace;

c. Establish hiring goals and timetables for increasing the number of women in Defendant's workforce;

d. Remove Buchmeier from his supervisor position;

e. Forbid future violations of Title VII;

f. Adopt policies aimed at preventing and remedying any future violations that may occur, including an *effective* reporting procedure and *effective* investigation procedures that prevent retaliation; and,

g. Notify employees of the violation(s) and the remedy imposed by this Court.

**ANSWER:** Defendant denies that Plaintiff is entitled to any relief under Title VII.

141. Ms. Schell also respectfully requests that the Court order other monetary and/or equitable relief, including, but not limited to:

      a.    Lost past and future wages (including benefits), compensatory damages, and punitive damages;

      b.    Other monetary expenses incurred by Ms. Schell as a result of Defendant's conduct (including unemployment compensation benefits owed to the State of Illinois);

      c.    Pre-judgment interest allowed by law;

      d.    Attorney fees and costs (including any expert witness fees); and,

      e.    All other and (sic) relief that the Court may deem equitable, just or appropriate.

**ANSWER:** Defendant denies that Ms. Schell is entitled to any monetary and/or equitable relief.

## AFFIRMATIVE DEFENSES

1.    Plaintiff's claim of retaliatory discharge under Title VII is barred by Plaintiff's failure to state that claim as part of her Charge of Discrimination or an amendment to that Charge within 300 days of the alleged retaliation.

2.    Plaintiff's allegations fail to constitute severe and pervasive harassment based on gender or sex upon which relief can be granted.

3.    Plaintiff fails to state a cause of action upon which relief can be granted for common law retaliatory discharge or constructive discharge for pursuing a claim for workers' compensation.

WHEREFORE, Defendant requests this Honorable Court to dismiss the Complaint and each of its Counts and grant other appropriate relief as the Court deems proper.

Respectfully submitted,

_____/s/ Anthony S. Graefe_____
Anthony S. Graefe
Attorney for Defendant

Anthony S. Graefe
Mark Hansen
Graefe & Hansen, Ltd.
55 West Monroe
Suite 3550
Chicago, Illinois 60603
(312) 236-0177